FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DANIEL S.,[1]

               Plaintiff,

    v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY, [2]

              Defendant.

No. 1:21-cv-03078-MKD

ORDER DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

**ECF Nos. 16, 17**

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 17.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. §
1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §
416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work
activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial
gainful activity," the Commissioner must find that the claimant is not disabled. 20
C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two. At this step, the Commissioner considers the severity of the
claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from
"any impairment or combination of impairments which significantly limits [his or
her] physical or mental ability to do basic work activities," the analysis proceeds to
step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy
this severity threshold, however, the Commissioner must find that the claimant is
not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity. 20 C.F.R. §
416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 7, 2019, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2018.[3]  Tr. 15, 124, 259-67.  The application was denied initially, and on reconsideration. Tr. 191-94, 200-06.  Plaintiff appeared before an administrative law judge (ALJ) on September

---

[3] Plaintiff previously applied for Title II and Title XVI benefits on December 28, 2016; the application resulted in an unfavorable decision.  Tr. 15, 66, 87.  The Appeals Council denied review, and on February 24, 2020, this Court denied Plaintiff's motion for summary judgment.  Tr. 15, 88-93, 140-85.

ORDER - 6

8, 2020.  Tr. 36-65.  On October 1, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 7, 2019.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy; internal derangement of the right knee; degenerative disc disease; post-traumatic stress disorder (PTSD); and bipolar disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk about 6 hours in an 8-hour workday and can sit about 6 hours.  He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  He can frequently stoop, kneel, and crawl.  He can only occasionally crouch.  He should have only occasional exposure to excessive vibrations, hazardous machinery, and unprotected heights.  He is able to understand, remember, and carry out simple, routine instructions and have only brief and superficial interactions with supervisors, coworkers, and the public.

Tr. 20.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 29.  At step five, the ALJ found that, considering Plaintiff's age, education, work

ORDER - 7

experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as electrical accessories assembler, small products assembler, and hand packager and inspector.  Tr. 30.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 31.

On April 15, 2021, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 16 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 16 at 4-11.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834; (9th Cir. 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security

ORDER - 9

1    cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*
2    *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

3        Factors to be considered in evaluating the intensity, persistence, and limiting
4    effects of a claimant's symptoms include: 1) daily activities; 2) the location,
5    duration, frequency, and intensity of pain or other symptoms; 3) factors that
6    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and
7    side effects of any medication an individual takes or has taken to alleviate pain or
8    other symptoms; 5) treatment, other than medication, an individual receives or has
9    received for relief of pain or other symptoms; 6) any measures other than treatment
10   an individual uses or has used to relieve pain or other symptoms; and 7) any other
11   factors concerning an individual's functional limitations and restrictions due to
12   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §
13   416.929(c).  The ALJ is instructed to "consider all of the evidence in an
14   individual's record," to "determine how symptoms limit ability to perform work-
15   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

16       The ALJ found that Plaintiff's medically determinable impairments could
17   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's
18   statements concerning the intensity, persistence, and limiting effects of his
19   symptoms were not entirely consistent with the evidence.  Tr. 21.

20       *1.  Inconsistent Objective Medical Evidence*

ORDER - 10

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 21-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

First, the ALJ found the objective evidence is inconsistent with Plaintiff's reported significant physical limitations. Tr. 22-24. As discussed further *infra,* despite reported significant symptoms, Plaintiff sought minimal treatment for his physical complaints. Plaintiff contends that because there is a lack of evidence, there is no inconsistency to point to besides a single sensory examination. ECF No. 16 at 7. However, Plaintiff alleges ongoing significant limitations due to peripheral neuropathy, and a single sensory examination in the file is inconsistent with his allegation. Tr. 23. Further, despite abnormal sensation, Plaintiff had a normal gait. Tr. 401-02. Although Plaintiff had tenderness and decreased range of motion in his back, and tenderness/crepitus of the right knee, Plaintiff had a

ORDER - 11

negative straight leg raise test, normal coordination/station/gait, and normal range of motion in his knees.  Tr. 401-02.  When he was compliant with treatment, Plaintiff's diabetes improved, and physical examinations did not document any abnormalities to support Plaintiff's reported symptoms and limitations.  Tr. 22-23, 496-97, 572-73, 632, 638-39.  The ALJ reasonably found the objective evidence is inconsistent with Plaintiff's physical complaints.

Second, the ALJ found the objective evidence is inconsistent with Plaintiff's reported significant mental health limitations.  Tr. 24-26.  As discussed further *infra,* despite Plaintiff's allegations of significant limitations, he sought minimal treatment.  In January 2019, Plaintiff was depressed and anxious with a moderate impairment of judgment, but his examination was otherwise normal.  Tr. 24, 442. At a February 2019 examination, Plaintiff had a largely normal examination, with normal mood/affect, orientation, and concentration, and while he had some errors on memory and calculation testing, he was able to perform some of the tasks correctly.  Tr. 406-07.  In July 2019, Plaintiff appeared slumped but otherwise had a normal examination.  Tr. 460-61.  At appointments in November and December 2019, Plaintiff had normal mood, affect, orientation, judgment, cognition, thought content, and cooperation.  Tr. 25 (citing Tr. 619, 624, 626, 110-11).  In April 2020, Plaintiff had abnormal insight/judgment, and otherwise had a normal examination. Tr. 503-04.  The ALJ reasonably found Plaintiff's allegations of significant mental

ORDER - 12

health limitations were inconsistent with the objective medical evidence.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2. Lack of Treatment

The ALJ found Plaintiff's lack of treatment was inconsistent with his allegations.  Tr. 22-25.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when

ORDER - 13

evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ noted Plaintiff's treatment was primarily for diabetes.  Tr. 22. Plaintiff's diabetes with peripheral neuropathy was generally managed with diet, medication, and blood sugar monitoring.  *Id.*  In January 2019, he discontinued his medications, complaining they were too bulky to carry around, and he refused insulin.  *Id.* (citing Tr. 371).  In March 2020, Plaintiff reported only taking his medications "sometimes."  Tr. 23 (citing Tr. 568).  Plaintiff did not take any medications specifically for his reported neuropathy symptoms.

Despite complaining of back pain, Plaintiff never followed up on an orthopedic referral nor imaging.  Tr. 23 (citing Tr. 583).  Plaintiff only intermittently reported back pain and did not seek any treatment for his back.  Tr. 23.  Plaintiff contends he routinely complained of back pain, and NSAIDs were recommended, as well as acupuncture.  ECF No. 16 at 8-9.  However, Plaintiff does not point to any evidence he sought acupuncture and does not offer an explanation as to why he did not pursue acupuncture.  While there are other physical diagnoses in the file, Plaintiff also did not pursue treatment for those impairments, such as his knee impairment.  Tr. 24.

Regarding his mental health impairments, Plaintiff also sought limited mental health treatment.  Tr. 24.  There is an eleven-month gap in treatment from

February 2018 through January 2019, and another gap in treatment from January

until July 2019 when Plaintiff sought an incapacity evaluation for benefits. *Id.*

Although Plaintiff was prescribed psychiatric medications, he reported he stopped

taking them in February 2020 because they made him tired and there was no point

taking them. Tr. 25. Plaintiff contends the ALJ erred in considering his lack of

mental health care because he has mental impairments and difficulty getting along

with others. ECF No. 16 at 9. However, Plaintiff does not cite to any evidence

that his impairments prevented him from seeking ongoing care. On this record, the

ALJ reasonably found Plaintiff's lack of treatment was inconsistent with his

allegations. This was a clear and convincing reason, supported by substantial

evidence, to reject Plaintiff's claims.

### 3. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about his reported

symptoms and work history. Tr. 26. In evaluating a claimant's symptom claims,

an ALJ may consider the consistency of an individual's own statements made in

connection with the disability-review process with any other existing statements or

conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation,"

such as reputation for lying, prior inconsistent statements concerning symptoms,

and other testimony that "appears less than candid."). Moreover, evidence that the

ORDER - 15

claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted that Plaintiff reported his jobs ending due to irritability and difficulty getting along with others, while also reporting getting along well with past supervisors and some coworkers. Tr. 26. While he reported constant difficulty sleeping, he also reported getting more than eight hours of sleep per night, without issue falling asleep nor with awakenings, and feeling rested. Tr. 26, 405. While he has reported significant difficulties interacting with others, he reported having a social network including his mother, friends, and individuals at Neighborhood Health. Tr. 26, 405, 419-20, 607.

While Plaintiff reported using a cane, medical records do not document the use of an assistive device nor a prescription for a cane. Tr. 23, 26, 403, 406. An ALJ may discount a claimant's subjective complaints based on the unprescribed use of an assistive device, such as a cane. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). At a consultative examination, Plaintiff reported he was not using a cane

ORDER - 16

1 but stated he needed one because his legs "give out."  Tr. 406.  Plaintiff had a

2 normal gait without a cane.  Tr. 401.

3       The ALJ also found Plaintiff was motivated by secondary gain.  Tr. 26.  The

4 ALJ noted Plaintiff reported more significant limitations in connection with his

5 application for benefits, which are not supported by the record.  *Id.*  Plaintiff

6 sought limited treatment for his allegedly disabling symptoms, and when he

7 returned for an examination, he stated it was so he could get housing and SSI, and

8 pursue schooling for management or computers.  *Id.* (citing Tr. 422).  While

9 Plaintiff contends his own perception of his ability to attend school or work is not

10 indicative of whether he could actually work, Plaintiff's perceptions of his ability

11 is a valid consideration when determining the consistency of Plaintiff's statements.

12 *See Barnes v. Comm'r of Soc. Sec.,* No. 2:16-CV-00402-MKD, 2018 WL 545722,

13 at *5 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to

14 work, even if an optimistic self-assessment, is significant to the extent that the

15 Plaintiff is willing and able to work, as that belief indicates her allegation of

16 symptoms precluding work are not credible.").  This was a clear and convincing

17 reason, supported by substantial evidence, for the ALJ to reject Plaintiff's claims.

18      *4.  Activities of Daily Living*

19       The ALJ found Plaintiff's activities of daily living were inconsistent with his

20 allegations.  Tr. 26.  The ALJ may consider a claimant's activities that undermine

ORDER - 17

1    reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial

2    part of the day engaged in pursuits involving the performance of exertional or non-

3    exertional functions, the ALJ may find these activities inconsistent with the

4    reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

5    "While a claimant need not vegetate in a dark room in order to be eligible for

6    benefits, the ALJ may discount a claimant's symptom claims when the claimant

7    reports participation in everyday activities indicating capacities that are

8    transferable to a work setting" or when activities "contradict claims of a totally

9    debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

10           The ALJ noted that despite his reported significant physical limitations,

11   Plaintiff reported walking everywhere, leaving the house daily, and running on

12   occasion.  Tr. 26 (citing Tr. 405, 611).  Plaintiff also reported being able to wash

13   dishes, handle housekeeping, and tend a garden.  Tr. 26.  Plaintiff is able to care for

14   a dog, prepare meals daily, handle laundry, and grocery shop.  Tr. 306-08.

15   Although Plaintiff reported difficulties interacting with others, he also reported

16   having a social network of friends and maintaining a four-year romantic

17   relationship.  Tr. 26, 399.  Plaintiff reported going to churches and the library, and

18   spending time with a cousin.  Tr. 309, 399.  The ALJ reasonably found Plaintiff's

19   activities of daily living were inconsistent with his claims.  This was a clear and

20

-

ORDER - 18

1  convincing reason, supported by substantial evidence, to reject Plaintiff's symptom

2  claims.  Plaintiff is not entitled to remand on these grounds.

3  **B. Medical Opinion Evidence**

4      Plaintiff contends the ALJ erred in his consideration of the opinions of

5  William Drenguis, M.D., and Steven Olmer, Psy.D.  ECF No. 16 at 11-19.

6      As an initial matter, for claims filed on or after March 27, 2017, new

7  regulations apply that change the framework for how an ALJ must evaluate

8  medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

9  *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

10  C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give

11  any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to*

12  *Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

13  416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

14  medical opinions or prior administrative medical findings from medical sources.

15  20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the persuasiveness of

16  medical opinions and prior administrative medical findings include supportability,

17  consistency, relationship with the claimant (including length of the treatment,

18  frequency of examinations, purpose of the treatment, extent of the treatment, and

19  the existence of an examination), specialization, and "other factors that tend to

20  support or contradict a medical opinion or prior administrative medical finding"

ORDER - 19

1  (including, but not limited to, "evidence showing a medical source has familiarity

2  with the other evidence in the claim or an understanding of our disability

3  program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-

4  (5).

5          Supportability and consistency are the most important factors, and therefore

6  the ALJ is required to explain how both factors were considered. 20 C.F.R. §

7  416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
>     and supporting explanations presented by a medical source are to
>     support his or her medical opinion(s) or prior administrative
>     medical finding(s), the more persuasive the medical opinions or
>     prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior
>     administrative medical finding(s) is with the evidence from other
>     medical sources and nonmedical sources in the claim, the more
>     persuasive the medical opinion(s) or prior administrative medical
>     finding(s) will be.

14  20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how

15  the other factors were considered. 20 C.F.R. § 416.920c(b)(2). However, when

16  two or more medical opinions or prior administrative findings "about the same

17  issue are both equally well-supported . . . and consistent with the record . . . but are

18  not exactly the same," the ALJ is required to explain how "the other most

19  persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R.

20  § 416.920c(b)(3).

ORDER - 20

1    The Ninth Circuit addressed the issue of whether the changes to the

2    regulations displace the longstanding case law requiring an ALJ to provide specific

3    and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

4    *Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new

5    regulations eliminate any hierarchy of medical opinions, and the specific and

6    legitimate standard no longer applies.  *Id.*  The Court reasoned the "relationship

7    factors" remain relevant under the new regulations, and thus the ALJ can still

8    consider the length and purpose of the treatment relationship, the frequency of

9    examinations, the kinds and extent of examinations that the medical source has

10    performed or ordered from specialists, and whether the medical source has

11    examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

12    However, the ALJ is not required to make specific findings regarding the

13    relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

14    explanation supported by substantial evidence when rejecting an examining or

15    treating doctor's opinion as unsupported or inconsistent.  *Id.*

16    *1. Dr. Drenguis*

17    On February 1, 2019, Dr. Drenguis, an examining source, conducted a

18    physical examination and rendered an opinion on Plaintiff's functioning.  Tr. 398-

19    403.  Dr. Drenguis diagnosed Plaintiff with low back pain; right knee internal

20    derangement; and diabetes mellitus with peripheral neuropathy of both feet.  Tr.

ORDER - 21

402.  Dr. Drenguis opined Plaintiff's maximum standing/walking capacity is "at least four hours," and his maximum sitting capacity is "at least four hours"; he can lift/carry 20 pounds occasionally and 10 pounds frequently; he can frequently balance and occasionally climb, stoop, kneel, crouch, and crawl; and he has no manipulative nor workplace environmental limits.  Tr. 402-03.  The ALJ found some of Dr. Drenguis' opinion has support in examination findings, but the ALJ found the opinion as to Plaintiff's ability to stand/walk was not supported nor consistent with the evidence.  Tr. 27.  The ALJ found the State agency opinions "more persuasive" but did not otherwise specify how persuasive he found Dr. Drenguis' opinion.  Tr. 27.

First, the ALJ found Dr. Drenguis' opinion that Plaintiff is limited to "at least four hours" of standing/walking is vague.  Tr. 27.  How well an opinion is supported by an explanation is a relevant consideration.  20 C.F.R. § 416.920c(c)(1).  Dr. Drenguis did not explain what the maximum amount of time is that Plaintiff can stand or walk for in a workday.  *See* Tr. 402-03.  The ALJ reasonably found Dr. Drenguis' opinion was vague as to the maximum time Plaintiff is capable of standing/walking.

Second, the ALJ found Dr. Drenguis' opinion is not consistent with the objective evidence.  Tr. 27.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20

ORDER - 22

C.F.R. § 416.920c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  The ALJ found Dr. Drenguis' opinion was not consistent with later records, which do not contain any objective evidence documenting impaired sensation, balance, nor mobility deficits.  Tr. 27.  As discussed *supra,* Plaintiff sought limited treatment for his impairments, and the minimal examinations document largely normal physical examinations.  *See, e.g.,* Tr. 394, 42-3, 486, 496-97, 572-73, 632, 638-39.  Plaintiff contends the lack of evidence to support Dr. Drenguis' opinion is not inconsistent with the opinion, as the ALJ has no normal sensory examinations to point to, and Plaintiff had ongoing uncontrolled diabetes. ECF No. 16 at 15.  However, Plaintiff responded well to gabapentin.  Tr. 388. Further, Plaintiff's claims alone are not sufficient to establish disability; there must be objective evidence to support his claims.  *See* SSR 16-3p.  The ALJ reasonably found Dr. Drenguis' opinion was inconsistent with the objective evidence.

Third, the ALJ found the State agency opinions were more persuasive than Dr. Drenguis' opinion.  Tr. 27.  Consistency and supportability are the two most important factors when considering the persuasiveness of medical opinions.  20 C.F.R. § 416.920c(b)(2).  Dr. Virji and Dr. Staley opined Plaintiff was capable of light work with occasional climbing and crouching; frequent stooping, kneeling, and crawling; and without concentrated exposure to vibration or hazards.  Tr. 27

ORDER - 23

(citing Tr. 118-19, 134-3).  The ALJ adopted the State agency opinions.  Tr. 27.

The ALJ found the opinions are well-supported by references to generally normal

findings, and consistent with the longitudinal evidence that document largely

normal examinations.  *Id.*  The State agency opinions are also consistent with the

opinions of Mr. Heath and Ms. Banks, who both opined Plaintiff can perform light

work.  *Id.,* Tr. 478-80, 488-90.  The ALJ reasonably found the State agency

opinions are more persuasive than Dr. Drenguis' opinion.  The ALJ did not err in

his consideration of Dr. Drenguis' opinion.

### 2. Dr. Olmer

Dr. Olmer examined Plaintiff and rendered an opinion on his functioning on

two occasions.  Tr. 457-61, 500-04.  Dr. Olmer was noted as the supervising

provider and reviewed and approved the record of one visit Plaintiff had with

another provider; it is unclear if Dr. Olmer participated as a member of a treatment

team on other occasions.  Tr. 616-17.  Plaintiff reported Dr. Olmer was a treating

provider, Tr. 56, but Plaintiff cites only to the two examinations and not to any

treatment records that document Dr. Olmer had an ongoing treatment relationship

with Plaintiff, ECF No. 16 at 16-19.

On July 22, 2019, Dr. Olmer conducted a psychological examination and

rendered an opinion on Plaintiff's functioning.  Tr. 457-61.  Dr. Olmer diagnosed

Plaintiff with chronic PTSD, insomnia, and cannabis dependence.  Tr. 459.  He

opined Plaintiff has no to mild limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions, perform routine tasks without special supervision, and make simple work-related decisions; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, learn new tasks, ask simple questions or request assistance, communicate and perform effectively in a work setting, and set realistic goals and plan independently; and marked limitations in his ability to adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, maintain appropriate behavior in a work setting, and complete a normal workday/workweek without interruptions form psychologically based symptoms. Tr. 459.  Dr. Olmer further opined Plaintiff's impairments overall have a marked severity rating, and the limitations are expected to last 10 to 15 months with treatment.  Tr. 459-60.

On April 13, 2020, Dr. Olmer conducted another psychological examination and rendered another opinion on Plaintiff's functioning.  Tr. 500-04.  Dr. Olmer again diagnosed Plaintiff with chronic PTSD, insomnia, and cannabis dependence. Tr. 502.  He opined Plaintiff has no to mild limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions,

ORDER - 25

perform routine tasks without special supervision, and make simple work-related

decisions; moderate limitations in his ability to understand, remember, and persist

in tasks by following detailed instructions, perform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances without

special supervision, learn new tasks, adapt to changes in a routine work setting, be

aware of normal hazards and take appropriate precautions, ask simple questions or

request assistance, communicate and perform effectively in a work setting, and set

realistic goals and plan independently; and marked limitations in his ability to

maintain appropriate behavior in a work setting and a complete a normal

workday/workweek without interruptions from psychologically based symptoms.

Tr. 502.  The ALJ found Dr. Olmer's opinions that Plaintiff had marked limitations

are not persuasive.  Tr. 28-29.

First, the ALJ found Dr. Olmer's opinions that Plaintiff has some marked

limitations is not supported by Dr. Olmer's explanations nor examination notes.

*Id.*  Supportability is one of the most important factors an ALJ must consider when

determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).

The more relevant objective evidence and supporting explanations that support a

medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §

416.920c(c)(1).  Dr. Olmer's examinations contained largely normal findings.  Tr.

28-29, 460-61, 503-04.  Dr. Olmer completed two questionnaires, which do not

ORDER - 26

1  contain explanations for his opinion. *See* Tr. 457-61, 500-04. The record

2  accompanying the 2019 opinion states only that "the impact of symptoms was

3  found to be at a marked level with a prognosis of 10-15 months with consistent

4  counseling and marijuana reduction," but no explanation of why the symptoms

5  caused marked limitations. Tr. 468. The record accompanying the 2020 opinion

6  states Plaintiff's symptoms appear to impact him at a marked level, but again does

7  not explain how the symptoms cause marked limitations. Tr. 57. Plaintiff

8  contends Dr. Olmer's opinions are consistent with Plaintiff's reported subjective

9  symptoms, however Plaintiff does not cite to any objective evidence to support his

10  claims. ECF No. 16 at 17. The ALJ reasonably found Dr. Olmer's opinions were

11  not supported by an explanation nor examination findings.

12       Second, the ALJ found Dr. Olmer's opinions were inconsistent with the

13  objective medical evidence as a whole. Tr. 28-29. Consistency is one of the most

14  important factors an ALJ must consider when determining how persuasive a

15  medical opinion is. 20 C.F.R. § 416.920c(b)(2). The more consistent an opinion is

16  with the evidence from other sources, the more persuasive the opinion is. 20

17  C.F.R. § 416.920c(c)(2). The ALJ found Plaintiff's mental health records

18  generally documented normal mental status findings, including normal

19  cooperation, cognition, memory, thought processes, mood, affect, and grooming.

20  Tr. 28-29. Although there are intermittent abnormalities, such as reported

ORDER - 27

irritability and anger, and one occasion of tangential thinking, the minimal

abnormalities are not consistent with marked limitations.  *See* Tr. 19, 29, 406-07,

552, 565, 605.  While Plaintiff contends this was not a valid reason to reject Dr.

Olmer's opinion because Dr. Olmer also based his opinion on his examinations,

Dr. Olmer's examinations were also largely normal, as discussed *supra.*  ECF No.

16 at 18.  The ALJ also noted that despite Plaintiff's reported difficulty engaging

with others, he was able to sustain a four-year relationship, and reported a desire to

return to school.  Tr. 28.  The ALJ reasonably found Dr. Olmer's opinions were

inconsistent with the objective evidence.

Third, the ALJ found Dr. Olmer's 2020 opinion was internally inconsistent.

Tr. 29.  The more relevant objective evidence and supporting explanations that

support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §

416.920c(c)(1).  While Dr. Olmer noted Plaintiff's insight and judgment were

abnormal, the explanation only includes a quote from Plaintiff, "Marijuana is the

only thing that treats my anger and doesn't make me so tired that I can't do

anything else."  Tr. 504.  On the record accompanying the questionnaire, Dr.

Olmer noted "Insight: Difficulty acknowledging presence of substance abuse

problems."  Tr. 52.  Dr. Olmer did not give any further explanation regarding how

Plaintiff's insight/judgment were abnormal.  Despite finding Plaintiff's statement

about his drug use amounted to abnormal insight/judgment, and that Plaintiff has

ORDER - 28

"substance abuse problems," Dr. Olmer also opined Plaintiff's substance use was not the primary cause of his limitations and substance use treatment is not recommended. Tr. 503. The ALJ found the two statements inconsistent and noted there was no explanation to reconcile the discrepancy. Tr. 28. Plaintiff contends there is no inconsistency. ECF No. 16 at 19. As the only documented abnormality on examination related to Plaintiff's substance use, and Dr. Olmer did not provide any explanation, the ALJ reasonably found there was an unexplained internal inconsistency in the opinion. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

1    The District Court Executive is directed to file this Order, provide copies to

2 counsel, and **CLOSE THE FILE**.

3    DATED February 24, 2023.

4                              _s/Mary K. Dimke_
                              MARY K. DIMKE
5                      UNITED STATES DISTRICT JUDGE

ORDER - 30